**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 3, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

AMY LEE DAVIS,

    Defendant - Appellant.

No. 20-5016

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:19-CR-00101-GKF-1)**
_____

Robert S. Jackson, Oklahoma City, Oklahoma, for Defendant-Appellant.

Joel-lyn A. McCormick, Assistant United States Attorney (R. Trent Shores, United States Attorney, with her on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.
_____

Before **MORITZ**, **SEYMOUR**, and **BRISCOE**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

Amy Davis appeals her drug-conspiracy conviction, arguing that the government failed to present sufficient evidence of the charged conspiracy, that the proof introduced at trial varied from the allegations in the indictment, and that the

district court plainly erred in failing to give appropriate jury instructions. Finding these arguments unpersuasive, we affirm.

## Background

In October 2018, law-enforcement officers began investigating Davis's role in methamphetamine trafficking in Tulsa, Oklahoma. Based on information provided by a confidential informant, officers surveilled a shop located on East 21st Place that Davis visited every day. They observed that there would be no activity at this shop until Davis arrived, after which short-term traffic consistent with drug distribution would occur. Law enforcement also learned that Davis obtained her methamphetamine from Oklahoma City, and GPS data confirmed that she traveled to Oklahoma City on a weekly basis. Immediately before driving to Oklahoma City, Davis would visit her mother's house, where—according to the officers' investigation—she kept the cash she received from her drug sales. And when she returned to Tulsa, she would go directly to the shop on East 21st Place.

Two witnesses who were not named in the indictment, Richard French and Sebastian Cobelo, testified at trial that they purchased dealer quantities of methamphetamine from Davis at the East 21st Place shop and other locations in 2018. French met Davis in May 2018 and purchased methamphetamine from her two or three times a month through at least August 2018. And Cobelo testified that Davis sold him methamphetamine several times—eventually "almost on a daily basis"— between July or August 2018 and October 2018. R. vol. 2, 263. In at least some of her sales to both men, Davis fronted them methamphetamine and received payments

2

after they had resold the drugs. Moreover, she gave Cobelo a vehicle to drive and firearms to protect himself from anyone who tried to take drugs or money from him. Both witnesses knew that Davis was selling them drugs she had obtained in Oklahoma City.[1]

Between the evening of November 12 and the morning of November 13, 2018, Davis traveled with an individual named Carlos Banegas to an apartment complex in Oklahoma City. Inside the apartment, Banegas remained in the living room smoking marijuana, but he observed Davis go into another room empty-handed and come out with a Christmas gift bag. Davis and Banegas then left the apartment, and Davis placed the gift bag in the back seat of her vehicle. On their return to Tulsa, Banegas took over driving for Davis when she became sleepy. Around 3:00 a.m., Banegas violated the speed limit, and surveilling police officers conducted a traffic stop. A drug dog alerted on the vehicle, and the officers searched the car. In the back seat, they found a Christmas gift bag containing approximately seven pounds of methamphetamine.

Law enforcement placed Davis and Banegas under arrest and executed search warrants at locations associated with Davis's drug-trafficking activities, including her mother's house and the shop on East 21st Place. Officers found a firearm and $4,000

---

[1] At trial, French first testified he was unaware of Davis's source of supply or the reason for her trips to Oklahoma City. But the prosecutor later impeached him with his prior inconsistent statements. Specifically, the prosecutor asked French, "When you previously told me that you knew one of Davis'[s] suppliers was in Oklahoma City, were you being truthful?" R. vol. 2, 439. French responded, "Yes." *Id.* at 40.

cash in a bedroom that Davis had been using at her mother's house. And they found digital scales and multiple firearms in the East 21st Place shop.

Later in the day on November 13, 2018, Davis called her mother's home from jail and spoke with her sister, Cindy Davis (Cindy). Davis asked if she had any money there, and Cindy responded, "They took it, they found it." R. vol. 2, 246. Davis also asked Cindy to locate various people who might be able to bond her out of jail. Davis was ultimately bonded out, and she resumed drug trafficking. In April 2019, Davis was arrested when she attempted to sell methamphetamine to an undercover officer.

On June 6, 2019, a grand jury returned a five-count indictment against Davis, Banegas, and Cindy. The only count at issue in this appeal, Count 1, reads:

> From as early as in or about June 2018 to the date of this [i]ndictment, in the Northern District of Oklahoma and elsewhere, the defendants, AMY LEE DAVIS, CARLOS BANEGAS, and CINDY DAVIS, together and with others known and unknown to the [g]rand [j]ury, did willfully, knowingly, and intentionally combine, conspire, confederate, and agree, each with the other, to commit offenses against the United States as follows:
>
> (a) To possess with intent to distribute 500 grams or more of . . . methamphetamine . . . ; and
>
> (b) To distribute 500 grams or more of . . . methamphetamine . . . .

R. vol. 1, 13–14. Additionally, Count 2 of the indictment charged Davis and Banegas with possessing 500 grams or more of methamphetamine on or about November 13, 2018; Count 3 charged Davis with using and maintaining a drug-involved premise on East 21st Place from June 2018 until November 2018; Count 4 charged Davis and

4

Cindy with using a telephone to facilitate "their drug-trafficking conspiracy" on or about November 13, 2018; and Count 5 charged Davis with possessing 50 grams or more of methamphetamine on or about April 4, 2019. *Id.* at 17.

Davis went to trial alone. On the government's motion, the district court dismissed all charges against Banegas a few days before Davis's trial, while the charges against Cindy were initially severed and later dismissed altogether. At Davis's trial, Banegas testified he had very limited interactions with Davis and did not know the purpose of their trip to Oklahoma City, nor did he know that the gift bag contained methamphetamine. Cindy testified she never agreed to distribute methamphetamine and was not trying to further any drug-trafficking activities during her November 13 phone call with Davis. And when Davis moved for acquittal at the close of the government's case, the government conceded that Cindy had been an unwitting participant in Davis's drug-trafficking activities.

The district court granted Davis's motion for acquittal as to Count 4 but denied her motion as to the other counts. Regarding Count 4, the court held that this count was premised solely on an alleged conspiracy between Davis and Cindy and the government had not sufficiently proven that Davis and Cindy conspired together. But Count 1 did not suffer from a similar defect because it included an allegation that Davis conspired with others known and unknown to the grand jury.

In submitting the case to the jury, the district court instructed the jury that Count 1 of the indictment alleged the following conspiracy:

From as early as in or about June 2018 to [June 6, 2019], in the Northern District of Oklahoma and elsewhere, [Defendant AMY LEE DAVIS] . . . with others known and unknown to the [g]rand [j]ury, did willfully, knowingly, and intentionally combine, conspire, confederate, and agree, each with the other, to commit [drug-trafficking] offenses against the United States . . . .

*Id.* at 323 (first three alterations in original). The court also instructed the jury on the elements of conspiracy and informed the jury that it could not find Davis guilty unless it was convinced that the government had proven each element beyond a reasonable doubt.

The jury found Davis guilty on Counts 1, 2, 3, and 5 of the indictment, and the district court sentenced Davis to concurrent sentences of 216 months on each count. Davis then filed this appeal, raising three arguments that challenge only her conviction on the Count 1 conspiracy charge. First, she contends that the government failed to present sufficient evidence to prove that she was guilty of the conspiracy charged in the indictment. Second, she relatedly argues that the conspiracy proven at trial impermissibly varied from the conspiracy alleged in the indictment. Third, she argues that the district court committed plain error by failing to give the jury a multiple-conspiracy instruction and by removing Cindy's name from the jury instructions' description of Count 1 of the indictment. As more fully explained below, we find none of these arguments persuasive.

**Analysis**

We begin with Davis's challenge to the sufficiency of the evidence supporting her conspiracy conviction. "We review de novo whether the government presented

sufficient evidence to sustain a conviction." *United States v. Hill*, 786 F.3d 1254, 1261 (10th Cir. 2015). "Evidence is sufficient to support a conviction if, viewing the evidence and all reasonable inferences from it in the light most favorable to the government, a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Id.* "We will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury." *Id.* (quoting *United States v. Summers,* 414 F.3d 1287, 1293 (10th Cir. 2005)). On a conspiracy charge, "the government must establish: (1) that an agreement existed between two or more people to violate the law; (2) that the defendant knew at least the conspiracy's essential objectives; (3) that the defendant knowingly and voluntarily became a part of the conspiracy; and (4) that the co[]conspirators were interdependent." *Id.* at 1266.

The government argues, and we agree, that the trial evidence of Davis's interactions with French and Cobelo was sufficient to establish beyond a reasonable doubt that she knowingly and voluntarily participated in an interdependent drug-trafficking conspiracy with both men between June 2018 and June 2019. Davis made repeated sales to both men, fronted them drugs, and even gave Cobelo a vehicle and firearm to further his drug-trafficking activities. "[E]vidence of fronting coupled with evidence of repeat drug purchases is sufficient 'to distinguish a conspiracy from a nonconspiratorial buyer-seller relationship.'" *United States v. Gallegos*, 784 F.3d 1356, 1360 (10th Cir. 2015) (quoting *United States v. Johnson*, 592 F.3d 749, 755 n.5 (7th Cir. 2010)); *see also United States v. Acosta-Gallardo*, 656 F.3d 1109, 1124 (10th Cir. 2011) (noting that "interdependence may be shown if a defendant's

7

activities 'facilitated the endeavors of other alleged co[]conspirators or facilitated the venture as a whole'" and explaining that fronting drugs "facilitate[s] the venture as a whole" (quoting *United States v. Heckard*, 238 F.3d 1222, 1230 (10th Cir. 2001))). Indeed, Davis herself acknowledges that this evidence "may seem enough to establish a drug conspiracy in the general sense." Aplt. Br. 22.

Nevertheless, Davis argues that the scope of the alleged conspiracy must be impliedly limited to the events surrounding the November 13 traffic stop because (1) two of the other counts of the indictment (specifically, Counts 2 and 4) were based on events occurring on November 13, 2018, and (2) Count 1 specifically identified Banegas and Cindy as coconspirators. And under Davis's narrow reading of the indictment, because her interactions with French and Cobelo did not occur on November 13 or involve Banegas or Cindy, those transactions fell outside the scope of the alleged conspiracy and are not sufficient to support her conviction.

Davis's argument ignores both the plain language of the indictment and relevant caselaw. Count 1 of the indictment plainly alleges that Davis conspired with others to distribute drugs "[f]rom as early as in or about June 2018 to [June 6, 2019]." R. vol. 1, 13. Davis cites no authority for her argument that a broad timeframe alleged in one count of an indictment must be narrowed based on more limited times frames alleged in other counts of the indictment. And we see no legitimate basis for such a rule.[2] *Cf. United States v. Qayyum*, 451 F.3d 1214, 1218

---

[2] Even if we could accept Davis's argument, she fails to explain why Count 1 would be implicitly limited only to the dates charged in Counts 2 and 4 of the

8

(10th Cir. 2006) (holding that court is bound by plain language of indictment in determining scope of alleged conspiracy).

Davis likewise fails to cite any authority holding that naming specific codefendants in a conspiracy charge impliedly limits the scope of the alleged conspiracy, and this argument cannot be reconciled with applicable precedent. It is well-settled "that an indictment may charge . . . the commission of any one offense in several ways," and "each offense whose elements are fully set out in an indictment can independently sustain a conviction." *United States v. Miller*, 471 U.S. 130, 136 (1985); *see also id.* (citing *Crain v. United States,* 162 U.S. 625, 634–36 (1896), for proposition that "indictment count that alleges in the conjunctive a number of means of committing a crime can support a conviction if *any* of the alleged means are proved" (emphasis added)). Here, the indictment charged in the conjunctive that Davis, Banegas, and Cindy, "together with others known and unknown to the [g]rand [j]ury," conspired to possess and to distribute methamphetamine. R. vol. 1, 13. But the government could prove its case in the disjunctive by showing that Davis conspired with Banegas *or* with Cindy *or* with another individual or individuals. *See Miller*, 471 U.S. at 136; *see also United States v. Spencer*, 592 F.3d 866, 873–74 (8th

---

indictment, as opposed to the dates charged in Count 3. Count 3 alleged Davis maintained a drug-involved premises for approximately five months, and Davis's sales to French and Cobelo fell within this timeframe; indeed, some of the sales even occurred at the shop described in Count 3. Thus, even if Count 1 were somehow limited by the other counts of the indictment, Davis's argument would nevertheless fail. But again, we reject Davis's argument for the more fundamental reason that she has not presented any valid reason why we would narrow the scope of one count of an indictment based on the allegations contained in other counts.

Cir. 2010) (holding that named codefendant could be convicted of conspiracy even if other named codefendants were acquitted because "[t]he indictment in this case specifically states that the defendants conspired with each other *and with others*"; explaining that "[a]n indictment may be phrased in the conjunctive, when the statute and jury instructions are phrased in the disjunctive, without creating a constructive amendment of the indictment" (second quoting *United States v. Thompson*, 560 F.3d 745, 748 (8th Cir. 2009))).

Indeed, we have held that a defendant charged in a drug-trafficking conspiracy along with both named and unnamed conspirators may be found guilty so long as "the jury could have concluded that an unknown or unnamed coconspirator existed and that [the] defendant and the unknown or unnamed coconspirator agreed to violate the drug laws," regardless of whether the evidence showed participation by any other named conspirators. *United States v. Howard*, 966 F.2d 1362, 1364 (10th Cir. 1992). In light of these cases, we reject Davis's argument that a broad conspiracy charge involving both named and unnamed conspirators must be narrowed to include only activities involving the named conspirators. *See id.*; *United States v. Nichols*, 374 F.3d 959, 968–69 (10th Cir. 2004), *cert. granted and opinion vacated to allow resentencing under United States v. Booker*, 543 U.S. 220 (2005), *opinion reinstated*, 410 F.3d 1186 (10th Cir. 2005).

Davis further argues that the indictment cannot be read to reach any drug-trafficking agreements or activities outside of the November 13 traffic stop, despite the broad language of Count 1, because the grand jury separately indicted her for

other drug-trafficking conspiracies occurring in the same timeframe.[3] Again, Davis fails to cite to any authority holding that a jury lacked sufficient evidence to convict a defendant of an offense simply because the charged offense could have overlapped with charges brought against the defendant in another case. Such overlap could potentially implicate double-jeopardy concerns, but Davis has not raised a double-jeopardy argument in this appeal. And whatever the merits of any arguments she could have made to challenge the breadth or specificity of the indictment, the evidence presented at trial was sufficient to establish every essential element of the conspiracy charged in this indictment—a conspiracy with others known or unknown to distribute or to possess with intent to distribute at least 500 grams of methamphetamine between June 2018 and June 2019. We therefore reject her challenge to the sufficiency of the evidence.

In light of this holding, we also reject Davis's argument that a prejudicial variance occurred between the conspiracy alleged in the indictment and the conspiracy proven at trial. Again, the evidence that Davis conspired with French and Cobelo to distribute large quantities of methamphetamine between June 2018 and June 2019 falls squarely within the broad scope of the conspiracy alleged in the indictment. Accordingly, there was no variance between the conspiracy charged in

---

[3] As requested by the government, we take judicial notice of these other indictments against Davis and note that none of them named or even mentioned Cobelo, French, Banegas, or Cindy. *See Guttman v. Khalsa*, 669 F.3d 1101, 1127 n.5 (10th Cir. 2012) ("[W]e may take judicial notice of public records, including district court filings."); *see also* Fed. R. Evid. 201.

11

the indictment and the conspiracy proven at trial. *See United States v. Marquez*, 898 F.3d 1036, 1043 (10th Cir. 2018). And because there was no variance, we need not address the question of prejudice. *See id.*

Next, we turn to Davis's two arguments challenging the jury instructions. As Davis concedes, she must show plain error on appeal because she did not specifically object to the jury instructions below. *See Jones v. United States*, 527 U.S. 373, 387 (1999) ("A party generally may not assign error to a jury instruction if he fails to object before the jury retires or to 'stat[e] distinctly the matter to which that party objects and the grounds of the objection.'" (alteration in original) (quoting Fed. R. Crim. P. 30)); *id.* at 388 ("[A] request for an instruction before the jury retires [does not] preserve an objection to the instruction actually given by the court."). Under plain-error review, she can obtain relief "only if four requirements are satisfied: (1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the [d]efendant's substantial rights; and (4) 'the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012) (second alteration in original) (quoting *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005)).

We first consider Davis's argument regarding the lack of a multiple-conspiracy instruction. "A multiple[-]conspiracy charge instructs the jury to acquit if it finds that the defendant was not a member of the indicted conspiracy but rather was involved in another conspiracy." *United States v. Edwards*, 69 F.3d 419, 433 (10th Cir. 1995)

12

(quoting *United States v. Cavin*, 39 F.3d 1299, 1310 (5th Cir. 1994)). In this circuit, a defendant is not necessarily entitled to a multiple-conspiracy instruction. *Id.* at 434 n.9. And a district court does not reversibly err in choosing not to give a multiple-conspiracy instruction "as long as the instructions informed the jury that 'the government had the burden of proving beyond a reasonable doubt the [single] conspiracy as alleged[] and that the evidence should be considered separately as to each individual defendant.'" *Id.* at 433 (first alteration in original) (quoting *United States v. Evans*, 970 F.2d 663, 675 (10th Cir. 1992)).

Davis contends that the district court plainly erred under *Edwards* because it neither gave a multiple-conspiracy instruction nor instructed the jury that "the evidence should be considered separately as to each individual defendant." *Id.* According to Davis, the fact that she was tried alone did not negate the need for an individual-defendant instruction under the second part of the *Edwards* test; rather, she argues that *Edwards* required the district court to instruct the jury both that other defendants had been named in the indictment and that the jury must consider the evidence separately as to each defendant.

Davis has not established error, plain or otherwise. Although the district court chose not to give a multiple-conspiracy instruction, the first part of the *Edwards* test was clearly satisfied by the district court's instruction that the jury could not find Davis guilty on Count 1 unless it found beyond a reasonable doubt that the government had proven each element of the conspiracy charged against Davis in that count. *See id.* And we are not persuaded that a district court must instruct a jury to

13

consider the evidence separately as to each individual defendant when only one defendant is being tried. Such an instruction would only introduce confusion. *Cf. United States v. Faust*, 795 F.3d 1243, 1253–54 (10th Cir. 2015) (holding district court did not err in declining to give requested jury instruction where requested instruction would have been likely to confuse jury); *United States v. Kaatz*, 705 F.2d 1237, 1246 (10th Cir. 1983) ("The requested instruction would have added nothing but confusion and was properly refused."). The second part of the *Edwards* test simply does not apply in this single-defendant case. *See* 69 F.3d at 433. Davis therefore has not shown that the district court erred by failing to give the jury a multiple-conspiracy or an individual-defendant instruction, much less that any such error was plain.[4]

Second, Davis relatedly argues that the district court committed plain error when it omitted Cindy's name from the jury instructions' summary of Count 1 of the indictment. Davis contends that "[i]nclusion of Cindy's name in this instruction was critical as it would have operated to define and limit the conspiracy charged in Count 1 to the conduct surrounding the November 13 traffic[ ]stop." Aplt. Br. 36.

Again, we see no error, much less plain error, in the district court's instructions. As discussed above, we are not persuaded by Davis's unsupported argument—contrary to *Howard* and other precedent—that the scope of a conspiracy

---

[4] Of course, the district court's decision not to give a multiple-conspiracy instruction "did not impair [Davis's] ability to argue to the jury that [she was] in fact involved in a number of separate conspiracies rather than a single unified conspiracy." *Evans*, 970 F.2d at 675.

14

charge referring to both named and unnamed coconspirators is limited and defined by the named codefendants. Moreover, in light of the government's concession that Cindy was an unwitting participant rather than an intentional conspirator in her sister's drug-trafficking activities, including Cindy's name in the jury instruction on Count 1 would have created a risk that the jury would erroneously find Davis guilty of conspiring with Cindy. "The elements of the offense are not satisfied unless one conspires with at least one true co[]conspirator." *United States v. Barboa*, 777 F.2d 1420, 1422 (10th Cir. 1985). Thus, rather than committing error, the district court may have avoided error by removing Cindy's name from the instructions, thereby reducing the likelihood that the jury would mistakenly find Davis guilty based on her interactions with Cindy rather than with her true coconspirators.

**Conclusion**

Based on the evidence presented at trial, a rational jury could readily find that Davis conspired with "others known and unknown" to the grand jury (specifically, French and Cobelo) to possess and to distribute more than 500 grams of methamphetamine between June 2018 and June 2019. R. vol. 1, 13. This evidence fell within the broad scope of the conspiracy alleged in the indictment, and thus no fatal variance occurred. And Davis has not shown any error, much less plain error, in the instructions given to the jury. We therefore affirm Davis's conviction and sentence.