**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 31, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

───────────────────────────────

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAMES MICHAEL POTERBIN,

    Defendant - Appellant.

No. 23-3128

───────────────────────────────

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:19-CR-20079-JAR-7)**

───────────────────────────────

Kevin Kumar, Squire Patton Boggs (US) LLP, Los Angeles, California (Keith Bradley, Squire Patton Boggs (US) LLP, Denver, Colorado, with him on the briefs), for Defendant-Appellant.

James Michael Poterbin, pro se, filed a supplemental brief on his own behalf.

Natasha K. Harnwell-Davis (Kate E. Brubacher, former United States Attorney, James A. Brown, Appellate Chief, Ryan J. Huschka, and Duston J. Slinkard, former Acting United States Attorney, Topeka, Kansas; Nicole M. Argentieri, Acting Assistant Attorney General and Lisa H. Miller, Deputy Assistant Attorney General, Appellate Section, Criminal Division, Washington, D.C., with her on the briefs), for Plaintiff-Appellee.

───────────────────────────────

Before **HARTZ**, **EBEL**, and **ROSSMAN**, Circuit Judges.

───────────────────────────────

**EBEL**, Circuit Judge.

───────────────────────────────

In this direct criminal appeal, Defendant James Poterbin challenges his convictions and sentence for 1) conspiring to distribute and to possess with the intent to distribute methamphetamine; 2) kidnapping; and 3) using a firearm in furtherance of a drug-trafficking crime. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we AFFIRM his convictions and sentence. We DISMISS without prejudice his ineffective-assistance-of-counsel claims.

## I. FACTUAL BACKGROUND

The evidence at Mr. Poterbin's trial, viewed in the light most favorable to the verdict, see United States v. Chapman, 839 F.3d 1232, 1235 (10th Cir. 2016), established the following: Brandon West stayed at a house on Ruby Avenue in Kansas City, Kansas, where he used and sold illicit drugs—primarily methamphetamine. Mr. West let his buyers use the drugs at his house. Mr. West's cousin David Carr supplied Mr. West with methamphetamine. Mr. Carr, in turn, obtained methamphetamine from Mr. Poterbin.

On April 18, 2019, Mr. West and a group that included Mariah Vieni and her boyfriend D.B. were using drugs at the house. When the drugs ran out, Mr. West asked if anyone in the group could help him buy more methamphetamine. Ms. Vieni offered to get some from a supplier she knew. After getting Mr. Carr's approval, Mr. West gave Ms. Vieni approximately $500 from his earlier drug sales so that Ms. Vieni could go buy more methamphetamine. Mr. West got Mr. Carr's approval because some of that money belonged to Mr. Carr and Mr. Poterbin. When Ms.

2

Vieni did not return to the house after more than an hour, Mr. West concluded that she had stolen the money. (Ms. Vieni had, instead, been robbed.) Mr. West and others would not let Ms. Vieni's boyfriend leave the house. Mr. West then called Messrs. Carr and Poterbin, telling them that Ms. Vieni had stolen their drug proceeds and that her boyfriend was still at the house. Messrs. Carr and Poterbin came over to the house and beat, tortured, stabbed and shot D.B. twice.

## II. PROCEDURAL BACKGROUND

The United States prosecuted several people present at the Ruby Avenue house from April 18 through 20, 2019. The United States charged Mr. Poterbin with 1) conspiring with Messrs. Carr and West and others, from March 1, 2019, through April 19, 2019, to distribute and to possess with the intent to distribute methamphetamine; 2) kidnapping; and 3) using a firearm in furtherance of the drug-trafficking offense charged in Count 1. Mr. Poterbin was charged as both a principal and as an aider-and-abettor. See 18 U.S.C. § 2. Mr. Poterbin and his co-defendant Carr were tried together. The jury convicted both defendants, specifically convicting Mr. Poterbin of all three offenses charged against him. The district court sentenced him to a total of 480 months in prison and five years' supervised release.

## III. DISCUSSION

On appeal, Mr. Poterbin, through defense counsel, contends that the district court abused its discretion in admitting at trial, under Fed. R. Evid. 404(b), evidence that after the drug-trafficking conspiracy charged in this case ended, Mr. Poterbin twice sold distributable amounts of methamphetamine to an unknown person who was not involved in the drug trafficking charged in this case. Mr. Poterbin also raises several other issues in his pro se supplemental brief. We conclude none of these arguments warrant reversing Mr. Poterbin's convictions or vacating his sentence.

### A. Any error in admitting the Rule 404(b) evidence was harmless

To convict Mr. Poterbin of the drug conspiracy charged in Count 1, the Government had to prove, among other elements, that 1) two or more people agreed (a) to possess with intent to distribute methamphetamine and/or (b) to distribute methamphetamine; 2) Mr. Poterbin knew the essential objectives of the conspiracy, and 3) he knowingly and voluntarily involved himself in the conspiracy. See United States v. Davis, 995 F.3d 1161, 1165–66 (10th Cir. 2021). Alternatively, to convict him of aiding and abetting the conspiracy, the Government had to prove that others conspired to distribute and to possess with the intent to distribute methamphetamine, Mr. Poterbin knew about and intentionally associated himself with that conspiracy, and he acted to bring about the conspiracy's success. See United States v. Ibarra-Diaz, 805 F.3d 908, 932 (10th Cir. 2015).

In order to help prove Mr. Poterbin's knowledge of the conspiracy and his intent to participate in methamphetamine distribution, the trial court allowed the Government to present evidence of two sales of distributable amounts of methamphetamine that Mr. Poterbin made to an unknown person after the conspiracy charged in Count 1 ended. Specifically, the trial court admitted evidence of two separate text message conversations between Mr. Poterbin and an unknown person, identified in Mr. Poterbin's phone as G David; and testimony from the Government's case agent interpreting the text messages to indicate that Mr. Poterbin twice sold a distributable amount of methamphetamine to G David. These text messages occurred several months after the drug-trafficking conspiracy charged in Count 1 ended, and there was no indication that G David was involved in that charged drug-trafficking conspiracy.

The trial court admitted this evidence of these two later methamphetamine sales, over Mr. Poterbin's objection, under Fed. R. Evid. 404(b), which permits evidence of other crimes, wrongs, or acts to prove, among other things, intent and knowledge.[1]

---

[1] Rule 404(b) provides in relevant part:

> **(1) Prohibited Uses.** Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> **(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

There are four requirements for evidence to be admissible under Rule 404(b): 1. It must be "offered for a proper purpose"; 2. It must be relevant; 3. Its probative value must not be substantially outweighed by its potential for unfair prejudice; and 4. Upon request, the trial court must "instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted."

United States v. Little, 119 F.4th 750, 777 (10th Cir. 2024) (quoting Huddleston v. United States, 485 U.S. 681, 691-92 (1988)), cert. denied, 2025 WL 2824198 (U.S. Oct. 6, 2025) (No. 25-5015).

The district court admitted the evidence of Mr. Poterbin's later methamphetamine sales for two purposes identified in Rule 404(b), to prove his knowledge and intent as to the drug-trafficking conspiracy charged in Count 1. The trial court gave jurors limiting instructions at the time the court admitted this evidence and again at the conclusion of the trial, telling jurors that they could "not use this evidence to decide whether or not Mr. Poterbin carried out the acts involved in the . . . crime or crimes charged in the indictment." (R. 3.1524.) But they could consider the Rule 404(b) evidence "to the extent you determine that it is relevant to the issues of intent or knowledge as it relates to the conspiracy, the drug conspiracy charge that is at issue in this case." (R. 3.1525–26.)

Focusing on the second and third requirements for the admission of Rule 404(b) evidence, Mr. Poterbin contends the trial court erred in admitting evidence of his two later methamphetamine sales. "[T]he admissibility of evidence under Rule

---

Fed. R. Evid. 404(b).

6

404(b)" is "a 'case-specific inquiry,'" United States v. Martinez, 122 F.4th 389, 416 (10th Cir. 2024) (quoting United States v. Henthorn, 864 F.3d 1241, 1248 (10th Cir. 2017)), that we review for an abuse of discretion, see United States v. Veneno, 107 F.4th 1103, 1116 (10th Cir. 2024), cert. denied, 2025 WL 3131791 (U.S. Nov. 10, 2025) (No. 24-5191).

Even when the trial court abuses it discretion in admitting Rule 404(b) evidence, "[w]e will not reverse a defendant's conviction on th[at] basis . . . if the error was harmless to the defendant." United States v. Kupfer, 797 F.3d 1233, 1243 (10th Cir. 2015). Such an error is harmless unless it "had a substantial influence on the trial's outcome or generates grave doubt as to whether it had such effect." Id. (citations, internal quotation marks omitted). "To make this assessment, we review the entire record de novo, 'examining the context, timing, and use of the erroneously admitted evidence at trial and how it compares to properly admitted evidence.'" Id. (quoting United States v. Hanzlicek, 187 F.3d 1228, 1237 (10th Cir. 1999)).

Here, we need not decide whether the trial court abused its discretion in admitting the challenged Rule 404(b) evidence of Mr. Poterbin's two later methamphetamine sales because any such error would be harmless. The challenged Rule 404(b) evidence played only a minor role at trial and the prosecutor did not refer to it at all in closing arguments. See id.

Moreover, there was a significant amount of other evidence presented at trial to support the jury convicting Mr. Poterbin of the charged drug-trafficking conspiracy. See United States v. Summers, 147 F.4th 1135, 1146 n.6 (10th Cir.

7

2025) (noting any error in admitting Rule 404(b) evidence would be harmless where there was other overwhelming evidence of defendant's guilt); United States v. Olivo, 80 F.3d 1466, 1469 (10th Cir. 1996) (upholding conviction where, even if trial court erred in admitting Rule 404(b) evidence, there was considerable other evidence linking defendant to charged drug-trafficking conspiracy).

That other evidence included testimony that Mr. Poterbin supplied Mr. Carr with methamphetamine which Mr. Carr, in turn, supplied to Mr. West, who sold it at the Ruby Avenue house; Mr. West once accompanied Mr. Carr on a trip to Mr. Poterbin's home to obtain an ounce of methamphetamine; prior to the April 18, 2019 incident involving D.B., Mr. Poterbin had been at the Ruby Avenue house where he violently enforced a drug debt owed to him by an individual nicknamed "Smurf"; Mr. Poterbin called Mr. West on April 18, wanting to know where his money was because Mr. Poterbin wanted to buy more methamphetamine; and Mr. Poterbin, along with Mr. Carr, came over to the Ruby Avenue house later on April 18 to get their drug money back from Ms. Vieni by torturing D.B.  In addition, after April 18, Mr. Poterbin told Bryan Spaulding, another person who was at the Ruby Avenue house on that day, that Mr. Poterbin sold ounce quantities of methamphetamine.

Finally, the district court gave thorough instructions limiting the jury's consideration of this Rule 404(b) evidence.  See United States v. Merritt, 961 F.3d 1105, 1118 (10th Cir. 2020) ("'When the evidence against a defendant is overwhelming, an erroneous admission of'" Rule 404(b) evidence "'is harmless—especially when the

8

trial court issues a proper limiting instruction.'" (quoting United States v. Caldwell, 589 F.3d 1323, 1334 (10th Cir. 2009)); see also Olivo, 80 F.3d at 1469.

For these reasons, even if the district court abused its discretion in admitting the Rule 404(b) evidence of Mr. Poterbin's two later methamphetamine sales, that error was harmless.[2]

**B. Mr. Poterbin's arguments raised in his pro se supplemental brief**

Mr. Poterbin raises the following arguments in his pro se supplemental brief, which we authorized him to file and which we liberally construe.[3]  See Haines v. Kerner, 404 U.S. 519, 520–21 (1972) (per curiam); see also United States v. Edwards, 69 F.3d 419, 427 n.5 (10th Cir. 1995).[4]

---

[2] For the same reason, the district court did not abuse its discretion in denying Mr. Poterbin's Fed. R. Crim. P. 33 motion for new trial based on admission of the Rule 404(b) evidence.  See United States v. Orozco, 916 F.3d 919, 924 (10th Cir. 2019) (noting this court reviews for abuse of discretion district court's decisions on Rule 33 motions for a new trial).

[3] The Government contends that Mr. Poterbin has waived the arguments he raised in his pro se brief by failing to follow this court's briefing requirement to identify where in the record he preserved these arguments for review.  See 10th Cir. R. 28.1(A). Even so, we exercise our discretion, see United States v. McBride, 94 F.4th 1036, 1049 n.15 (10th Cir. 2024), to "review[] the entire appellate record" ourselves, United States v. Bradley, 97 F.4th 1214, 1219 n.4 (10th Cir. 2024), and, therefore, we will overlook those omissions in Mr. Poterbin's pro se supplemental brief.  In doing so, we note that the Government has addressed the merits of Mr. Poterbin's arguments in its supplemental answer brief.  See United States v. Brooks, 161 F.3d 1240, 1247 (10th Cir. 1998).

[4] We have already addressed and rejected one of the issues Mr. Poterbin raised in his pro se supplemental brief—that the district court abused its discretion in admitting Rule 404(b) evidence of the two methamphetamine sales Mr. Poterbin made after the charged drug-trafficking conspiracy ended.

**1. There was sufficient evidence to support each of Mr. Poterbin's convictions**

Mr. Poterbin argues there was insufficient evidence to support each of his three convictions. His defense attorney raised these arguments in the district court in Fed. R. Crim. P. 29 motions made during and after trial.

> We review the sufficiency of the evidence to support a conviction de novo to "determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." United States v. Gordon, 710 F.3d 1124, 1141 (10th Cir. 2013). In conducting this review, "we consider all of the evidence, direct and circumstantial, along with reasonable inferences, but we do not weigh the evidence or consider the relative credibility of witnesses." United States v. Griffith, 928 F.3d 855, 868–69 (10th Cir. 2019) (quotation marks omitted). Thus, our review is limited and deferential; "we may reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 869 (quotation marks omitted).

United States v. Earls, 129 F.4th 850, 859 (10th Cir. 2025) (quoting United States v. Stepp, 89 F.4th 826, 831-32 (10th Cir. 2023)), cert. denied, 2025 WL 2824364 (U.S. Oct. 6, 2025) (No. 52-5276). We conclude there was sufficient evidence to support each of Mr. Poterbin's three convictions.

### a. Count 1, conspiring to distribute, or to possess with the intent to distribute, methamphetamine

For a reasonable jury to convict Mr. Poterbin on Count 1, the Government had to prove beyond a reasonable doubt that 1) two or more persons agreed to distribute methamphetamine, or to possess methamphetamine with the intent to distribute it;

2) Mr. Poterbin knew the essential objectives of the conspiracy; 3) he knowingly and voluntarily participated in the conspiracy; 4) there was an interdependence among members of the conspiracy; and 5) the overall scope of the conspiracy involved a measurable amount of methamphetamine. See Davis, 995 F.3d at 1166. We have already set forth in detail the significant evidence presented at trial from which a rational jury could find each element of this conspiracy. That evidence was more than sufficient to support the jury's guilty verdict.

### b. Count 2, kidnapping

Count 2 charged Mr. Poterbin with kidnapping and, alternatively, aiding and abetting kidnapping. The district court instructed jurors that, to convict Mr. Poterbin of kidnapping, they had to find beyond a reasonable doubt that he 1) knowingly kidnapped D.B. by seizing, confining, or holding him, 2) kidnapped D.B. for ransom, and 3) willfully used an instrumentality of interstate commerce—a cell phone—to commit or further the crime. See 18 U.S.C. § 1201(a)(1).

Mr. Poterbin argues that there was insufficient evidence for jurors to find either the first or the third element. He specifically contends that there was no evidence that he confined and held D.B. because D.B. was already being confined by Mr. West and others before Mr. Poterbin arrived at the Ruby Avenue house. But there was evidence from which a rational jury could find that, after he and Mr. Carr arrived at the house, they continued to confine and hold D.B., blocking his exit,

11

binding his arms, and eventually duct-taping his shirt over his head, in addition to beating and torturing D.B.

Mr. Poterbin also argues that there was no evidence that he used a cell phone in connection with the charged kidnapping. Mr. Poterbin asserts that it was instead Mr. Carr who used D.B.'s cell phone to call Ms. Vieni twice. During those calls, Mr. Carr engaged the speaker phone in the presence of Mr. Poterbin's assault on D.B. to advance Mr. Poterbin's efforts to collect drug money he believed had been stolen by Ms. Vieni. The purpose of the calls was so that Ms. Vieni could hear D.B. screaming and begging Ms. Vieni to bring back the money to Messrs. Carr and Poterbin. Based on this evidence, a rational jury could find that Mr. Poterbin used a cell phone to facilitate his kidnapping D.B. and holding him for ransom.

Alternatively, there was sufficient evidence from which a rational jury could have found beyond a reasonable doubt that Mr. Poterbin aided and abetted Mr. Carr's kidnapping D.B. and using a cell phone to facilitate that offense. See Ibarra-Diaz, 805 F.3d at 932–34 (holding, alternatively, that there was sufficient evidence to support a jury finding that the defendant aided and abetted the offense of possessing drugs with the intent to distribute). That is, there was sufficient evidence for a reasonable jury to find that Mr. Carr committed all the elements of kidnapping, and that Mr. Poterbin both willfully associated himself with the kidnapping and sought to make that venture succeed through some action of his own. See id. at 932 (setting forth elements of aiding and abetting).

### c. Count 7, using, brandishing and discharging a firearm during the drug-trafficking conspiracy charged in Count 1

Count 7 charged Mr. Poterbin with using, carrying, brandishing and discharging a firearm in furtherance of the drug-trafficking conspiracy charged in Count 1. Alternatively, Count 7 charged Mr. Poterbin with aiding and abetting that offense. The trial court instructed jurors that, to convict Mr. Poterbin of using, brandishing and discharging a firearm in furtherance of the drug-trafficking conspiracy charged in Count 1, they first had to find beyond a reasonable doubt that Mr. Poterbin committed the drug-trafficking conspiracy charged in Count 1. We have already explained that there was sufficient evidence for a reasonable jury to find that element beyond a reasonable doubt.

Second, the trial court instructed jurors they had to find that Mr. Poterbin used, brandished and/or discharged a firearm in furtherance of the drug-trafficking conspiracy. (The jury found he possessed, brandished, and discharged a firearm.) Mr. Poterbin argues that there was insufficient evidence to support finding this second element because his possession and use of a firearm on April 18 was not in proximity to any methamphetamine or proceeds from methamphetamine sales. But there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Mr. Poterbin used, brandished and discharged a firearm on April 18 to try to collect a drug debt resulting from the drug-trafficking conspiracy charged in Count 1. That is sufficient. See United States v. Hamilton, 587 F.3d 1199, 1210 (10th Cir. 2009) (citing cases holding that a drug conspiracy conviction can be based solely on

13

proof the defendant helped collect drug debts).  That included evidence that when Messrs. Poterbin and Carr arrived at the Ruby Avenue house to try to get their drug money back, they brandished their guns in D.B.'s presence.  Then they pistol-whipped D.B. before Mr. Carr shot him.

In a related argument, Mr. Poterbin asserts that the jury was confused by the aiding-and-abetting instruction's application to Count 7.  The Government argued during its closing that, if jurors found that it was Mr. Carr who shot D.B. in each leg or if they were not sure whether it was Mr. Carr or Mr. Poterbin who shot D.B., jurors could find Mr. Poterbin guilty of aiding and abetting that discharge.  During deliberations, the jury sent the court a question, asking for "further clarification on Instruction no. 18 [the aiding-and-abetting instruction] in relation to counts 6 and 7.  Specifically, if we believe both defendants were present and a weapon was brandished and discharged, can a guilty verdict be inferred for one or both defendants."  (R. 1.406.)  The court answered: "The government must prove the First and Second elements detailed in Instruction 18, beyond a reasonable doubt.  Please read Instruction no. 18 as a whole for further explanation of what the government must prove."  (Id.)  Both defense attorneys and the prosecutor approved the court's response.  The jury thereafter convicted Mr. Poterbin on Count 7, using, brandishing, and discharging a firearm in furtherance of the drug-trafficking conspiracy charged in Count 1.  To the extent jury confusion resulted in the note to the court, there is no indication that jurors were confused after the court's response to their question.

**d. Credibility of Government witnesses Vieni and D.B.**

Mr. Poterbin argues that "[t]here was insufficient evidence that any crime ever occurred because" Ms. Vieni and Mr. D.B. "have both lied to the police before." (Aplt. S. Br. 3.)  We construe this argument to assert that his convictions should be overturned because Ms. Vieni and Mr. D.B. lack credibility.  In reviewing on appeal whether there was sufficient evidence to support a conviction, however, we may not weigh the credibility of the evidence.  See, e.g., Earls, 129 F.4th at 859.  Moreover, there was much more evidence than just Ms. Vieni's and Mr. D.B.'s testimony that supported Mr. Poterbin's convictions.

**2. Ineffective assistance of trial counsel**

Mr. Poterbin asserts that his trial attorney provided constitutionally ineffective representation.  Specifically, Mr. Poterbin asserts that defense counsel failed to recognize a flaw in the special verdict form; failed to recognize that the pattern instruction, apparently on kidnapping, was erroneously amended to change the word "seized" to "seizing"; and gave Mr. Poterbin incompetent advice during the plea negotiations, leading to Mr. Poterbin proceeding to trial.

"We generally do not review an ineffective assistance of counsel argument on direct appeal."  United States v. Sjodin, 139 F.4th 1188, 1206 (10th Cir. 2025).  In fact, "[s]uch claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed."  United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).  The reason is that the defendant, in a later collateral 28 U.S.C. § 2255 proceeding,

15

will be able to develop the factual record often necessary to support his ineffective assistance claim. See id. "Even if evidence is not necessary, at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim." Id. We, therefore, do not address the merits of Mr. Poterbin's ineffective-assistance claims now on direct appeal but instead dismiss those claims without prejudice to his raising them in a collateral proceeding.

### 3. Brady violation/ineffective assistance

Mr. Poterbin next argues that his trial attorney committed a Brady[5] violation by failing to provide Mr. Poterbin with discovery that the Government turned over to defense counsel. Brady and its progeny require the Government to turn over exculpatory evidence to the defense. See United States v. Dermen, 143 F.4th 1148, 1196 (10th Cir. 2025). Mr. Poterbin's contention, instead, is that his defense attorney failed to provide Mr. Poterbin with the discovery that the Government turned over to defense counsel. We deem that argument to assert defense counsel was ineffective, a claim which we decline to address now in this direct criminal appeal. See Galloway, 56 F.3d at 1240.

---

[5] Brady v. Maryland, 373 U.S. 83 (1963).

**4. Procedural reasonableness of sentence**

Mr. Poterbin asserts that his sentence was procedurally unreasonable because the district court made several errors in calculating his total offense level under the sentencing guidelines and because the jury, rather than the sentencing court, should have been required to find that these enhancements applied to his case. Because we could not find where Mr. Poterbin raised these arguments at sentencing, we review them for plain error. See United States v. Harbin, 56 F.4th 843, 845 (10th Cir. 2022); Brooks, 161 F.3d at 1247. "Under the plain error standard, we will vacate a sentence only if" Mr. Poterbin can show: "(1) there is error, (2) that is plain; (3) that affects substantial rights, or in other words, affects the outcome of the proceeding; and (4) substantially affects the fairness, integrity, or public reputation of judicial proceedings. . . . An error is plain if it is clear or obvious under current, well-settled law." United States v. Pena, 963 F.3d 1016, 1023 (10th Cir. 2020) (further quotation marks omitted).

**a. The district court's application of offense-level enhancements**

Applying the 2021 Sentencing Guidelines, the district court calculated Mr. Poterbin's total offense level based on his kidnapping conviction. The court began with a base offense level of 32 for kidnapping, as provided by U.S.S.G. § 2A4.1(a). The court then added three enhancements for a total offense level of 42. Mr. Poterbin, on appeal, asserts the district court erred in applying those enhancements.

17

### i. Application of six-level enhancement for demanding a ransom

The district court added six offense levels under § 2A4.1(b)(1) because a ransom was demanded. Mr. Poterbin argues that that was error because it double counted the ransom, which was also an element of his kidnapping conviction, which the base offense level already counted.

Mr. Poterbin does not assert that either the Supreme Court or this court has previously decided this question and we could not locate any such case. Two cases from other circuits have rejected this argument, for different reasons. See United States v. Acevedo, 824 F.3d 179, 184–85 (1st Cir. 2016) (rejecting argument that application of six-level ransom enhancement is impermissible double counting, noting U.S.S.G. § 2A4.1(a)'s base offense level will not always be based on a ransom because it also applies to kidnapping convictions where victim is held for "reward or otherwise," 18 U.S.C. § 1201(a), as well as to convictions for offenses other than kidnapping); United States v. Vizcarra, 668 F.3d 516, 519–27 (7th Cir. 2012) (holding guidelines' structure permitted applying six-level enhancement for kidnapping involving ransom demand when ransom was also element of kidnapping conviction).

We need not definitively decide the double counting question presented here. Instead, we conclude that Mr. Poterbin has failed to establish that any error the district court may have made in applying § 2A4.1(b)(1)'s six-level enhancement was

18

plain error; that is, he has not shown that the error was "clear or obvious under current, well-established law." Pena, 963 F.3d at 1023.

### ii. Application of a two-level enhancement for causing serious bodily injury and another two-level enhancement for using a dangerous weapon

The district court also added two offense levels under U.S.S.G. § 2A4.1(b)(2)(B) after finding that the victim, D.B., suffered "serious injury." In addition, the district court added another two levels under U.S.S.G. § 2A4.1(b)(3) because a dangerous weapon was used, based on D.B. being shot and stabbed. Mr. Poterbin contended that applying both of these two-level enhancements amounted to impermissible double-counting. But again he fails to cite, and we have not found, any Supreme Court or Tenth Circuit cases holding that applying both of these enhancements amounts to impermissible double counting. Cf. United States v. Campus, 147 F.4th 1147, 1151 (10th Cir. 2025); United States v. Reyes Pena, 216 F.3d 1204, 1209 (10th Cir. 2000). We again need not definitively resolve this question in order to hold that Mr. Poterbin has not established that any error the sentencing court made in applying both of these enhancements in his case was plain error; that is, error that was clear or obvious. See Pena, 963 F.3d at 1023.

### b. The sentencing court, rather than a jury, properly found the sentencing guideline enhancements applied

Lastly, Mr. Poterbin is incorrect in asserting that a jury had to find that these sentencing guideline enhancements applied to his case. See United States v. Walker,

19

74 F.4th 1163, 1193–95 (10th Cir. 2023).  The case on which Mr. Poterbin relies, Erlinger v. United States, 602 U.S. 821 (2024), is distinguishable.  In Erlinger, the Supreme Court reiterated that a jury must find, beyond a reasonable doubt, any factor that increases the statutory maximum or statutory mandatory minimum sentence a defendant faces.  See id. at 833–35.  Here, based on the jury's convicting Mr. Poterbin of kidnapping, he was subject to a statutory maximum life sentence.  See 18 U.S.C. § 1201(a).  That never changed.  The sentencing guideline enhancements only increased his advisory guideline range within that statutory maximum.  See Walker, 74 F.4th at 1194–95.

## IV. CONCLUSION

We have determined that any error in admitting the Rule 404(b) evidence was harmless.  We DISMISS Mr. Poterbin's ineffective-assistance claims without prejudice.  The rest of Mr. Poterbin's challenges to his convictions and sentence also do not warrant relief.  We, therefore, AFFIRM his convictions and sentence.